EXHIBIT A

1  Dawn M. Smith, Esq., SBN 222481
2  SMITH CLINESMITH, LLP
   325 N. St. Paul St., 29th Floor
3  Dallas, TX 75201
   Telephone: (214) 953-1900
4  Facsimile: (214) 953-1901
   dawn@smithclinesmith.com
5  service@smithclinesmith.com
   Attorneys for Plaintiff
6

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

FEB 24 2021

BY _____
NICOLE CARTWRIGHT, DEPUTY

7          **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8            **IN AND FOR THE COUNTY OF SAN BERNADINO**

9                              **CIV SB 2 1 0 7 2 3 8**

10 MICHAEL LAWLER, Individually and as    ) Case No.: _____
   heir and Successor in Interest to BILL   )
11 LAWLER, Deceased,                       )         **C O M P L A I N T**
                                            )
12          Plaintiff,                      )
                                            )   1. **VIOLATIONS OF THE ELDER**
13 v.                                       )      **AND DEPENDENT ADULT CIVIL**
                                            )      **PROTECTION ACT [Wel. & Instit.**
14 CEDAR OPERATIONS, LLC d/b/a CEDAR )         **Code § 15600 et seq.]**
   MOUNTAIN POST ACUTE, and DOES 1-50 )    2. **NEGLIGENCE**
15                                          )   3. **WRONGFUL DEATH**
          Defendants.                       )
16                                             **JURY TRIAL DEMANDED**

17      COMES NOW Plaintiff, Michael Lawler, Individually and as Successor-In-Interest to

18 BILL LAWLER, by and through undersigned counsel, and files this Complaint and Demand for

19 Jury Trial against Defendants and states the following:

20                        **NATURE OF THE CASE**

21   1. This case arises under the Elder and Dependent Adult Civil Protection Act (Welf. & Inst.

22      Code. Sec. 15600 et seq.) based upon Defendants' neglect and deliberate disregard for the

23      health and safety of decedent BILL LAWLER, an 56-year-old aged and frail "dependent

24      adult," while at all relevant times a resident at Defendant's skilled nursing facility, CEDAR

25

-1-
COMPLAINT

MOUNTAIN POST ACUTE ("CEDAR MOUNTAIN") in Yucaipa, California. Defendants, and each of them, (1) were required to meet the basic needs of MR. LAWLER, such as nutrition, hydration, hygiene, safety and medical care, including infection control and prevention, and prevention of serious injury, (2) knew of the conditions that made MR. LAWLER, a dependent adult, unable to provide for her own basic needs arising from his lifetime diagnosis of type two diatebets, hypertension, anemia, obesity, and end stage renal failure; and (3) denied and withheld the services and supervision necessary to meet MR. LAWLER'S basic needs with knowledge that MR. LAWLER's injuries set forth herein were substantially certain and/or acted with conscious disregard of the high probability of such injuries.

2. On March 4, 2020, Governor Newsom proclaimed a State of Emergency in California as a result of the threat of COVID-19. Pursuant to the State of Emergency Declaration CEDAR MOUNTAIN was on notice of an infectious disease that could cause acute respiratory distress and had constructive notice of its obligations to create and implement an infection control policy pursuant to under Title 22, California Regulations Section 72321 and 72523. Despite awareness of its obligations arising under these regulations as far back as 2017, CEDAR MOUNTAIN failed to establish and implement the state mandated infection control policies, which led to an outbreak of the COVID-19 illness within the facility. Despite knowing that there was an ongoing outbreak, Defendants re-admitted Mr. Lawler to the facility without disclosing to any of Mr. Lawler's family that the facility was a COVID-19 hotspot. As a result of Defendants' failure to disclose, MR. LAWLER (1) contracted the novel coronavirus which caused MR. LAWLER substantial pain and suffering and ultimately her rapid demise and untimely death on April 5, 2020.

3. At all relevant times Defendants' managing agents of the nursing facility, CEDAR MOUNTAIN CARE CENTER, including but not limited to Defendants' Director of Nursing, Ellyse Pandjaitan and/or Administrator Tanner Peterson, gave authority and/or ratified the abuse and neglect and decision not to inform Mr. Lawler's family that there had been a COVID-19 Outbreak within the facility. Defendant's managing agents knew CEDAR MOUNTAIN HEALTH CARE CENTER's employees/agents were ignoring policies and procedures necessary for the care and safety of MR. LAWLER, yet they ignored the ongoing conduct resulting in the injuries and damages alleged herein.

4. Defendants' managing agents, including but not limited to the Director of Nursing and Administrator, were well aware of the state requirements to implement an infection control policy well in advanced of the COVID-19 outbreak, yet ignored these legal requirements and took no reasonable corrective action to prevent future similar incidences. Defendants' managing agents thus knew their residents, including but not limited to MR. LAWLER, were substantially certain to be impacted by infections like COVID-19, yet failed to ensure that their infection control policy was properly followed and acted with conscious disregard of the high probability of infection like the one alleged herein.

## JURISDICTION AND VENUE

5. This cause of action is properly venued in SAN BERNADINO County inasmuch as Defendants' facility, CEDAR MOUNTAIN CARE CENTER is located in SAN BERNADINO County, and a substantial part of the events, acts, omissions and transactions complained of herein by CEDAR MOUNTAIN CARE CENTER and DOES 1-50 occurred in this County. CEDAR OPERATIONS, LLC, owns, operates, manages, or otherwise

exercise control of CEDAR MOUNTAIN POST ACUTE, a skilled nursing facility located at 11970 4th Street, Yucaipa, CA 92399.

6. Defendants DOES 1 – 50 have sufficient minimum contacts with California, or otherwise purposefully availed themselves of benefits and protections of California, or do business in California so as to render the exercise of jurisdiction over them by the California courts consistent with the traditional notions of fair play and substantial justice.

7. Plaintiff MICHAEL LAWLER, is the son and successor-in-interest of the decedent, BILL LAWLER, and at all relevant times Plaintiff's injuries and damages to BILL LAWLER occurred in SAN BERNADINO County as his father, decedent BILL LAWLER, was a neglected dependent adult under Welfare & Institution Code Section 15600 et seq, and all tortious claims alleged herein in occurred in SAN BERNADINO County. MR. LAWLER is and was at all relevant times a resident of SAN BERNADINO County, California.

8. The amount in controversy exceeds the jurisdictional minimum of this court.

**THE PARTIES**

9. At all relevant times, Plaintiff MICHAEL LAWLER and his aunt, Cathleen Lawler were actively involved in his father, BILL LAWLER's care and visited him frequently. MICHAEL LAWLER is lawfully entitled to pursue all claims and caused of actions for damages pursuant to Code of Civil Procedure sections 377.32, 377.60, 377.61, Welfare and Institution Code section 15657.3(d), and Probate Code section 48.

10. At all times mentioned, Decedent BILL LAWLER was 56 years of age and a "dependent adult" under Welfare and Institution Code section 15657.3(d) who had physical and mental limitations that restricted her ability to carry out normal activities of daily living and she could not protect his rights due to the physical and mental disabilities alleged herein.

11. Defendant CEDAR OPERATIONS, LLC, d/b/a CEDAR MOUNTAIN POST ACUTE, hereinafter "CEDAR MOUNTAIN" was at all relevant times herein a skilled nursing facility which provided services at 11970 4th Street, Yucaipa, California 92399. Defendant may be served with process through its registered agent National Registered Agents, Inc. at 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

12. Plaintiff is informed and believes and thereon alleges that Defendant CEDAR MOUNTAIN and DOES 1-50, inclusive are, and, at all times relevant to the acts and occurrences alleged herein were in the business of providing long-term care as a twenty-four-hour skilled nursing care facility as defined in §1250(c) of the Health & Safety Code and were subject to the requirements of Federal and State law. Plaintiff is informed and believe that CEDAR MOUNTAIN and DOES 1-50, inclusive are and were the owners, managers and/or alter-egos of CEDAR MOUNTAIN and ratified the conduct of DOES 1-50 and their respective agents and employees and are therefore vicariously liable for the acts and omissions of these co-Defendants, their agents and employees, as is more fully herein alleged.

13. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-50 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff is ignorant of the true names and capacities of the nurses and /or medical staff on duty and present during the occurrences herein alleged at CEDAR MOUNTAIN, and therefore sue these nurses or medical staff by the fictitious names of Defendants DOES 1-50 inclusive. Plaintiff is also ignorant of the true names and capacities of the various administrators, officers, and directors of CEDAR MOUNTAIN, sued herein as DOES 1-50, inclusive, and therefore sue them by such fictitious names. Plaintiff will seek leave of the Court to amend

this Complaint to identify said Defendants when their identities are ascertained. Plaintiff is informed and believes and thereon alleges that DOES 1-50 were licensed or unlicensed health care providers, rendering health care as a skilled nursing facility, and in the respective capacities of owners, managers, administrators, nurses, physician director, or otherwise, agents or employees, to patients, including MR. LAWLER. Plaintiff is informed and believes and, on that basis, alleges that each of the fictitiously named Defendants was in some form or fashion liable and legally responsible for the damages and injuries set forth herein.

14. Under the provisions of Welfare & Institutions Code §15610.27, while a resident at CEDAR MOUNTAIN, Plaintiffs' Decedent BILL LAWLER was 56 years old and at all times mentioned a "dependent adult" as defined in Welfare & Institutions Code §15610.17 and Defendants were "caretakers" in a trust relationship as defined in Welfare & Institutions Code §15610.17.

## FACTUAL BACKGROUND

15. Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendants' officers, agents, servants, employees, or representatives did such act or thing and that at the time of such act or thing was done, it was done with the full authorization or ratification of the Defendants, with implied or apparent authority, or was done in the normal routine course and scope of employment of Defendants' managing agents, officers, servants, employees, and/or representatives.

16. The California Legislature has recognized the important role of civil litigation in remedying abuse and neglect of elders and dependent adults. As stated in the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"):

> The Legislature recognizes that elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons...[and]
>
> The Legislature further finds and declares that infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and due to the lack of incentives to prosecute these suits...[and]
>
> It is the further intent of the Legislature...to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults. [Wel. & Inst. Code Sec. 15600]

17. During BILL LAWLER's residence at CEDAR MOUNTAIN, the Defendants knew that MR. LAWLER was in a compromised physical state. As a result, he required close supervision, close monitoring, and medical attention to ensure his health, safety and well-being. Defendant also knew by virtue of MR. LAWLER's physical state that he was dependent upon them for his activities of daily living including, but not limited to, feeding and dietary planning, skin care, hygiene infection control/prevention, toileting, and physical rehabilitation/exercise.

18. At all relevant times, MR. LAWLER, decedent, was 56-year-old male with a medical history of lifetime diagnosis of type two diabetes, hypertension, anemia, obesity, and end stage renal failure, which had the effect of limiting her mobility and made him dependent on CEDAR MOUNTAIN's staff for activities of Daily living. Each and all of these comorbidities, of which the Defendants were aware at the time of admission, made MR. LAWLER extremely susceptible to contracting airborne ailments.

19. On January 1, 2020 MR. LAWLER was admitted to CEDAR MOUNTAIN for physical therapy and rehabilitation. He was discharged to the hospital for issues arising from his kidneys, and returned to CEDAR MOUNTAIN on March 18, 2020, for rehabilitation

Upon admission MR. LAWLER was noted to be suffering from a lifetime diagnosis of type two diabetes, hypertension, anemia, obesity, and end stage renal failure

20. As a nursing home, CEDAR MOUNTAIN and DOES 1-50, and each of them, were charged with providing much needed care and rehabilitation services to dependent and elderly adults in San Bernadino County. Like other skilled nursing facilities ("SNFs"), CEDAR MOUNTAIN, was entrusted with highly vulnerable individuals, including but not limited to MR. LAWLER, who often had multiple physical impairments that required extensive assistance in the basic activities of daily living such as ambulation, turning and repositioning, and avoiding otherwise avoidable illnesses.

21. Like the other residents at CEDAR MOUNTAIN, MR. LAWLER was entirely dependent on Defendants. CEDAR MOUNTAIN's most important duty was to protect its residents from health and safety hazards. Defendants failed to meet their responsibilities to provide for the health and safety of MR. LAWLER and as a direct and proximate cause of Defendants' failure to meet those responsibilities MR. LAWLER contracted COVID-19, which caused extensive and unnecessary pain and suffering during the final days of his life.

22. Specifically, the Defendants failed to implement effective infection control policies throughout their facility, including:

    a. Admitting a patient without the illness while an outbreak was on going;

    b. Failing to inform family that there was a known outbreak before admitting him, thereby denying them the opportunity to seek other care;

    c. Failing to enforce social distancing among residents;

    d. Failing to cancel all group activities and communal dinning;

    e. Failing to timely restrict all visitors;

f.   Failing to ensure appropriate staffing levels;

g.   Failing to adequately screen volunteers and non-essential healthcare personnel prior to allowing heir entrance into the facility;

h.   Failing to actively screen everyone entering the building for fever and symptoms of COVID-19;

i.   Failing to monitor local, state and federal health guidance on the coronavirus for maintaining the safety of its residents

all of which enabled MR. LAWLER to contract COVID-19. The combination of these failures effectively caused catastrophic damage to MR. LAWLER, who passed away from COVID-19 ailments on April 5, 2020.

23. During his stay, and as a result of the COVID-19 outbreak at the facility, Mr. Lawler missed much needed dialysis treatment on April 3, 2020 as a result of the facility's staff fear of treating an infected patient.

24. California Regulations clearly demonstrate that at least as early as 2011, California Nursing homes were required to create, implement, maintain, and train their staff as to proper infection control techniques, an obligation which pertained to Defendant CEDAR MOUNTAIN inasmuch as they claim to operate their facility as a skilled nursing facility.

25. Despite this regulatory requirement, Defendant CEDAR MOUNTAIN failed to either create, implement, maintain, or train their staff in the proper infection control mechanisms necessary to avoid the transmission of disease.

26. Defendants' chronic violation of staff-to-patient ratios, inadequate training of its staff in relation to infection control, and failure to provide for MR. LAWLER's safety and care after assessing him as suffering from decreased mobility as alleged herein amounted to

*reckless neglect,* as Defendants' conduct towards BILL LAWLER arose to the level of a conscious choice of a course of action with knowledge of the serious danger to MR. LAWLER.

27. Despite their awareness of the risks to Plaintiff's decedent's health and well-being, the care custodian defendants and each of them repeatedly and flagrantly violated several provisions of title 22 of the California Code of Regulations as follows:

    a.   failed to frequently monitor decedent's condition in order to prevent injury [§72311(a)(1)(A)], which includes included monitoring her to prevent avoidable falls and accidents, and failure to prevent an otherwise avoidable infection;

    b.   failed to develop a care plan with measurable objectives to assure decedent received adequate care [§72311(a)(1)(B)];

    c.   failed to implement a reasonable care plan;

    d.   failed to notify decedent's treating physician of adverse changes in her condition [§72311(a)(3)(B)];

    e.   failed to properly organize, manage, operate, and/or control CEDAR MOUNTAIN [§72501];

    f.   violated decedent's right to be free from mental and/or physical abuse [§72527(a)(9)];

    g.   violated decedent's right to be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs [§72527(a)(11)];

    h.   failed to document reasons for the denial or limitations of decedent's rights in her health record;

a. failed to failed to properly implement and maintain a proper infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections [§72321(b)].

i. CEDAR MOUNTAIN failed to develop a comprehensive care plan for decedent which included measurable objectives and timetables to meet her medical, nursing, mental and psycho social needs identified in the comprehensive assessment for decedent; more specifically, they failed to develop a realistic plan to assess his ongoing pain, given defendant's knowledge that decedent had limited cognitive abilities [§72311(a)(2)];

j. during decedent's stay, CEDAR MOUNTAIN failed to maintain an adequate number of qualified personnel to carry out the functions of the facility, especially in light of the number of patients in its facility and the acuity of care necessary for the population of patients; CEDAR MOUNTAIN also failed to maintain the bare minimum daily average of 3.0 nursing hours per patient per day [§§72329(a) and (f), 72501(e)].

k. In addition, and also despite their awareness of the risks to decedent's health and well-being, the care custodian defendants and each of them failed to employ an adequate number of qualified personnel at CEDAR MOUNTAIN throughout the course of decedent's residency, a repeated and flagrant violation of Health and Safety Code §1599.1(a);

l. Failed to enforce social distancing among residents;

m. Failed to cancel all group activities and communal dining;

-11-
COMPLAINT

n.  Failed to timely restrict all visitors;

o.  Failed to ensure appropriate staffing levels;

p.  Failed to adequately screen volunteers and non-essential healthcare personnel prior to allowing heir entrance into the facility; and

q.  Failed to actively screen everyone entering the building for fever and symptoms of COVID-19;

r.  Failing to monitor local, state and federal health guidance on the coronavirus for maintaining the safety of its residents;

28. In addition, and also despite their awareness of the risks to decedent's health and well-being, the care custodian defendants and each of them repeatedly violated several provisions of title 42 of the Federal Code of Regulations as follows:

b.  failed to review and revise said defendants' assessment of decedent's needs as her condition changed [42 CFR §483.20(b)(5)];

c.  failed to develop a comprehensive care plan for meeting decedent's needs [42 CFR §483.20(d)];

d.  failed to provide decedent with the necessary care and services required to attain or maintain the highest practicable physical, mental and psychosocial well-being [42 CFR §483.25], including ensuring her fluid intake and output levels to ensure that she was receiving necessary fluids for proper function of MR. LAWLER's urinary tract;

e.  failed to provide proper nursing services, including but not limited to maintaining sufficient staffing levels to provide proper care [42 CFR §483.30];

f.  failed to develop a comprehensive care plan for decedent which included measurable objectives and timetables to meet his medical, nursing, mental and psycho social needs identified in the comprehensive assessment for decedent; more specifically, they failed to develop a realistic plan to assess her needs given Defendants' knowledge that decedent had limited cognitive abilities [42 CFR §§483.20(i) and (k)];

g.  failed to provide an environment to promote maintenance or enhancement of decedent's quality of life and violated decedent's right to be treated with dignity and respect [42 CFR §483.15];

h.  failed to provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psycho social well-being of decedent and other residents [42 CFR §483.30]

i.  failed to properly implement and maintain a proper infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections [42 C.F.R. §483.80].

29. As a direct and legal result of the foregoing, decedent was injured and sustained personal injury in a sum according to proof at trial.

30. As a further and direct result of the foregoing, Plaintiff required acute medical care and has incurred medical expenses in a sum according to proof at trial.

## COUNT I – ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT
### (AGAINST ALL DEFENDANTS)

31. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

32. At all relevant times BILL LAWLER was a dependent adult as defined by Welfare Institutions Code section 15610.27. He was 56 years of age at the time of Defendants' misconduct and completely reliant on Defendants for all of her care needs in light of her failing health, stroke, and immobility.

33. The actions described above constitute neglect as defined by Welfare and Institutions Code section 15610.57. Defendants, and each of them, neglected MR. LAWLER, abandoned their obligations and engaged in other mistreatment that resulted in physical harm, pain and mental suffering. Defendants as MR. LAWLER's care custodians, deprived MR. LAWLER of services that were necessary to avoid physical harm and mental suffering. Defendants failed to provide adequate funding and staffing to ensure that Defendants provided necessary care to MR. LAWLER. Defendant failed to: (1) exercise the degree of care that a reasonable person in a like position would exercise; (2) protect MR. LAWLER from health and safety hazards (3) provide necessary care and protection; (4) provide medical care for physical and mental health needs; (6) create and update an adequate plan of care to protect MR. LAWLER given the COVID-19 outbreak at CEDAR MOUNTAIN; (7) provide adequate staffing levels to provide MR. LAWLER with the assistance that she needed; and (8) adequately train staff to assess and respond to infections outbreaks. As described in this Complaint, Defendants' conduct constitutes neglect of an elder under Welfare and Institutions Code section 15610.57(a)(1) and (b)(1)-(4).

34. MR. LAWLER has been harmed by Defendants conduct as described herein. The pattern of substandard care and neglect to MR. LAWLER put her at extremely high risk for further injury and contracting COVID-19, and the resulting complications, including injury and death.  Defendants' conduct was a substantial factor in causing MR. LAWLER to suffer physical, emotional, and economic harm, as well as other damages in an amount to be determined according to proof.

35. Defendants acted with recklessness, malice, oppression and/or fraud.  Among other things, Defendants neglected to take the necessary precautions to prevent MR. LAWLER's injuries.   Defendants' failure to properly implement an infection control policy in accordance with state guidance  as alleged herein amounted to,  at a minimum constitutes *reckless neglect,* as Defendants' conduct towards BILL LAWLER rises to the level of a conscious choice of a course of action with knowledge of the serious danger to MR. LAWLER.   Plaintiff, individually and as successor in interest to MR. LAWLER is entitled to compensatory damages, as well as punitive damages in an amount to be determined according to proof, as well as attorney's fees and costs pursuant to Welfare and Institutions Code Section 15657.

## COUNT II – NEGLIGENCE
(AGAINST ALL DEFENDANTS)

36. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

37. Plaintiff was a resident of CEDAR MOUNTAIN and DOES 1-50 and under the care of Defendants, and each of them, from on or January 1, 2020 through April 5, 2020. By virtue of the foregoing, Defendants and each of them owed a duty of ordinary care to the decedent,

to use that degree of care and skill that a reasonably prudent person would use under the same or similar circumstances, including but not limited to a duty to:

   A. Ensure that each care worker receive adequate training before working with MR. LAWLER;

   B. Monitor, record and report changes in MR. LAWLER' condition;

   C. Note and properly react to emergent conditions and provide timely medical care to MR. LAWLER or otherwise act appropriately when conditions indicate; and

   D. Treat MR. LAWLER as an individual with respect, dignity, and without abuse;

   E. Implement a state required infectious control policy.

38. Defendants and each of them breached the aforesaid duty of care.

39. Defendants' negligence, carelessness, recklessness, and unlawfulness was a substantial factor in causing MR. LAWLER to suffer tremendous physical, emotional, economic and fatal harm as well as other damages to be proven at the time of trial.

40. As a direct and proximate cause of Defendants' tortious misconduct decedent suffered personal injuries and economic damages in a sum to be proven at the time of trial. MR. LAWLER suffered tremendous physical, emotional, and economic harm as well as other damages in an amount to be determined according to proof.

## COUNT III—WRONGFUL DEATH

### (AGAINST ALL DEFENDANTS)

41. Plaintiffs incorporate by reference and reallege all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

42. Defendants and DOES 1-50, and each of then, negligently, carelessly, recklessly and/or unlawfully operated CEDAR MOUNTAIN so as to cause the death of BILL LAWLER.

43. Defendants CEDAR MOUNTAIN and DOES 1-50 were agents, servants, employees, successors in interest, and/or joint venturers of one another, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture when they negligently, carelessly, recklessly, and unlawfully withheld necessary care from BILL LAWLER so as to cause BILL LAWLER'S death.

44. As a direct and legal result of the wrongful acts and omissions of the Defendants, BILL LAWLER died.

45. By reason of the wrongful death of BILL LAWLER resulting from the wrongful acts and omissions of the Defendants, and DOES 1-50, Plaintiffs have incurred funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

46. By reason of the wrongful death of BILL LAWLER, resulting from the wrongful acts and omissions of Defendants and DOES 1-50 and each of them, Plaintiff suffered and continue to suffer loss of love, companionship, comfort, affection, solace, and the moral and economic support of his father.

47. As a direct a legal result of the aforementioned acts of Defendants CEDAR MOUNTAIN, and DOES 1-50, inclusive, Plaintiffs, by reason of the wrongful death of BILL LAWLER, resulting from the wrongful acts and/or omissions of Defendants, hereby seek recovery of other such relief as may be just and provided for under Code of Civ. Proc. § 377.61.

48. Plaintiffs are informed and believe, and thereon allege, that in the days leading up to BILL LAWLER's death and continuing through her death, Defendants CEDAR MOUNTAIN and DOES 1 through 50, and each of them, at all times mentioned, were under a statutory duty to comply with all applicable federal and state laws and regulations governing nursing homes in California, including but not limited to the following:

- 42 C.F.R. § 483.10(a) & (e) (respect, dignity, & without abuse);
- 42 C.F.R. § 483.21 (care plan);
- 42 C.F.R. § 483.25 (quality care must be provided, protecting for health and safety hazards);
- 42 C.F.R. § 483.30 (adequate physician oversight);
- Cal. Health & Safety Code § 1279.6 (safety plan);
- Cal. Health & Safety Code § 1337.1 (adequate training);
- Cal. Health & Safety Code § 1559.1(a) (adequate and qualified staff);
- 22 CCR § 72311 (Care plan and prompt reporting)
- 22 CCR § 72315 (required services);
- 22 CCR § 72329(a) & 72501(e) (adequate staffing);
- 22 CCR § 72517 (adequate training);
- 22 CCR § 72523 (adequate policies and procedures);
- 22 CCR § 72527(a)(11) (respect, dignity, & without abuse);
- 22 CCR § 72537 (reporting of communicable diseases);
- 22 CCR § 72539 (reporting of outbreaks);
- 22 CCR § 72541 (reporting of unusual occurrences);
- 42 U.S.C. § 1396r(b)(2) (adequate plan of care);

Defendants' violations of these laws and regulations were a contributing factor to the death of BILL LAWLER.

49. BILL LAWLER was one of the class of persons whose protection the aforementioned laws and regulations, as well as Welfare and Institutions Code §§15600 *et seq.*, was afforded.

50. As a direct and legal result of the wrongful acts and omissions of Defendants, including DOES 1-50, BILL LAWLER died.

51. By reason of the wrongful death of BILL LAWLER resulting from the wrongful acts and omissions of Defendants, and DOES 1-50, Plaintiffs have incurred funeral and burial expenses, and related medical expenses, in an amount to be determined at trial.

52. By reason of the wrongful death of BILL LAWLER, resulting from the wrongful acts and omissions of Defendants

## ENHANCED REMEDIES - WILFULL MISCONDUCT
### (AGAINST ALL DEFENDANTS)

53. Plaintiff incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs as though set forth fully herein.

54. Because MR. LAWLER was a resident of CEDAR MOUNTAIN, defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive, had a duty under federal and state law and regulations designed and implemented for the protection and benefit of skilled nursing resident including MR. LAWLER to provide their patients with care, comfort and safety.

55. Defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive owed a duty to MR. LAWLER to provide her with 24-hour nursing care and physician services necessary to attain and maintain Plaintiff's highest practicable level of physical, mental and psycho social well-being.

56. In addition, and without limiting the generality of the foregoing, defendants CEDAR MOUNTAIN and DOES 1 to 50 provide skilled nursing care and physician services in accordance with the prevailing Standard of Practice in the Skilled Nursing Facilities and State and Federal laws and regulations;

a. establish and implement a patient-care plan for plaintiff based upon and including without limitation an ongoing process of identifying care needs;

b. maintain nursing and other staffing at levels adequate to meet the needs of decedent;

c. follow proper nursing and physician care standards to maximize the health, safety and well-being of decedent;

d. note and properly react to emergency conditions and to timely transfer decedent to an acute care facility or otherwise act when conditions so indicated;

e. maintain accurate records of decedent's condition, treatment and activity;

f. employ nursing staff with the qualifications to provide the necessary nursing services for plaintiff;

g. implement the facility policy and procedures consistently;

h. keep all current clinical information centralized in decedent's health record;

i. provide appropriate records for physicians and ancillary orders;

57. Defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive and each of them, willfully and/or recklessly ignored or otherwise violated the state and federal laws and regulations designed to protect patients of skilled nursing facilities, including MR. LAWLER; said laws include, without limitation, those statutes and regulations set forth herein.

58. These acts were intentional and in reckless disregard for the probability that severe injury or death would result from defendants' failure to carefully adhere to their duties. Defendant's managing agents including but not limited to the Director of Nursing and/or administrator knew of staff failures and ratified that conduct by failing to take any reasonable action to implement proper protocols to protect against severe injury and death.

59. Defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive and each of them, knew or should have known in the exercise of reasonable diligence, that there was a probability that injury or death to MR. LAWLER would result from their failure to perform their duties.

60. At all times herein mentioned, defendants CEDAR MOUNTAIN, and DOES 1 to 50, inclusive, and each of them, knew of the existence of the regulations and laws that protected elders and dependent adults and knew that the lives and health of residents such as decedent were at risk whenever defendants failed to meet such duties.

61. Defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive, and each of them, knew their routine, pattern and repeated failure to comply with such duties would probably result in injuries to residents, including MR. LAWLER and in fact, did result in injury to MR. LAWLER.

62. In breaching their duties to Decedent BILL LAWLER, defendants acted intentionally and in conscious disregard of the health and safety of their residents, including plaintiff, all according to the plan of maintaining inadequate resident care, thereby unlawfully increasing the profitability of CEDAR MOUNTAIN and DOES 1-50'S business operations.

63. That is defendants, under the control of and management of CEDAR MOUNTAIN and DOES 1-50, determined that they would ignore common and basic legally required minimum care to the elders and dependent under their care and custody for the sole purpose of increasing profits irrespective of the mayhem and death defendant's conduct was reaping upon the elders, including MR. LAWLER.

64. In doing the acts alleged herein, defendants CEDAR MOUNTAIN and DOES 1 to 50, inclusive, and each of them, breached certain duties which would require them to devote resources to the care and treatment of patients like MR. LAWLER and to maintain adequate staffing levels, not to divert those resources solely to the attainment of profit goals.

65. The conduct of defendants, as alleged, constitutes neglect as defined in Welfare & Institutions Code §15610.57 in that said defendants failed to exercise the degree of care that a reasonable person having the care and custody of BILL LAWLER would exercise. The "neglect" as defined in Welfare & Institutions Code, §15610.57 constitutes abuse of a dependent adult as contemplated by the Elder Adult Dependent Adult Civil Protection Act [EADACPA] and *Delaney v. Baker* (1999) 20 Cal.4th 23.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and damages against Defendant as follows:

    a.  General and special compensatory damages according to proof;

    b.  Punitive damages according to proof, including but not limited to treble punitive damages per Civil Code section 3345;

    c.  For prejudgment and post-judgment interest upon such judgment at the maximum rate provided by law;

    d.  Reasonable costs of suit;

    e.  Attorney's fees per Welfare and Institutions Code section 15657; and

    f.  Such other or further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED February 24, 2021.

/s/ Dawn M. Smith
Dawn M. Smith, Esq.
SMITH CLINESMITH, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
Telephone:  (214) 953-1900
Facsimile:  (214) 953-1901
dawn@smithclinesmith.com
Attorney for Plaintiffs
