# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

|  |  |
|---|---|
| | ) Case No.: EDCV 21-01017-CJC(SHKx) |
| **MICHAEL LAWLER, Individually and as Heir and Successor in Interest to BILL LAWLER, Deceased,** | ) ) ) ) |
| Plaintiff, | ) ) **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 10]** |
| v. | ) ) |
| **CEDAR OPERATIONS, LLC d/b/a CEDAR MOUNTAIN POST ACUTE,** | ) ) ) ) |
| Defendant. | ) ) ) ) |

1

2

## I.   INTRODUCTION

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

On February 4, 2021, Plaintiff Michael Lawler filed an action in San Bernardino County Superior Court on his own behalf and on behalf of his deceased father, Bill Lawler (the "Deceased"), against Defendant Cedar Operations, LLC, alleging violations of California's Elder and Dependent Adult Civil Protection Act, negligence, and wrongful death.  (*See* Dkt. 4-1 [Complaint, hereinafter "Compl."].)  The Deceased contracted COVID-19 at one of Defendant's skilled nursing facilities, Cedar Mountain Post Acute ("Cedar Mountain"), and passed away.  (*See id*.)  Defendant removed the action to this Court on June 17, 2021.  (Dkt. 1 [Notice of Removal].)  Defendant argues that removal is appropriate pursuant to the Public Readiness and Emergency Preparedness Act (the "PREP Act") under the doctrine of complete preemption.  (Dkt. 12 [Defendant's Opposition to Motion to Remand, hereinafter "Opp."].)  Defendant additionally argues that removal is appropriate under the *Grable* doctrine and 28 U.S.C. § 1442(a)(1).  Before the Court is Plaintiff's motion to remand the action back to state court.  (Dkt. 10 [Motion to Remand, hereinafter "Mot."].)  For the following reasons, Plaintiff's motion is **GRANTED**.[1]

18

19

## II.   BACKGROUND

20

21

22

23

24

On January 1, 2020, the Deceased was admitted to Cedar Mountain for therapy and rehabilitation.  (Compl. ¶¶ 11-12, 19.)  At the time of his admission, the Deceased was 56 years old and had several medical and mental issues that prevented him from carrying out normal daily activities.  (*See id*. ¶ 9.)  Defendant knew that the Deceased was in a

25

26

27

28

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for October 18, 2021 at 1:30 p.m. is hereby vacated and off calendar.

compromised physical and mental state, depended on Cedar Mountain staff for everyday activities, and required close monitoring to ensure his wellbeing.  (*Id*. ¶¶ 17-18.)

At some point after January 1, 2020, the Deceased was discharged from Cedar Mountain so that he could receive treatment for his kidneys at a hospital.  (*Id*. ¶ 19.)  He was readmitted to Cedar Mountain on March 18, 2020.  (*Id*.)  Plaintiff alleges that prior to the Deceased's return, there was a COVID-19 outbreak within Cedar Mountain.  (*Id*. ¶ 2.)  Plaintiff alleges that Defendant knew of the outbreak but failed to alert the Deceased or his family to the same prior to readmitting him.  (*Id*. ¶¶ 2, 22a-b.)  As a result, the Deceased contracted COVID-19.  (*Id*. ¶ 22.)  Plaintiff further alleges that because Cedar Mountain staff were afraid of contracting COVID-19 from the Deceased, they did not provide the Deceased with a much-needed dialysis treatment on April 3, 2020.  (*Id*. ¶ 23.)  The Deceased passed away "from COVID-19 ailments" on April 5, 2020.  (*Id*. ¶ 22.)

## III.   LEGAL STANDARD

Federal courts have subject matter jurisdiction only over matters authorized by the Constitution and Congress.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

1
2

## IV.   DISCUSSION

3

4    In his motion to remand, Plaintiff argues that the Court lacks subject matter

5    jurisdiction over his state law claims.  (*See* Mot.)  Defendant rebuts that: (1) all of

6    Plaintiff's claims are completely preempted by the PREP Act, which provides a basis for

7    federal question jurisdiction, (2) the *Grable* doctrine provides a second ground for federal

8    question jurisdiction, and (3) removal is appropriate under 28 U.S.C. § 1442(a)(1), which

     applies when the removing defendant acts at the direction of a federal officer.

9

10   Defendant is one in a long line of defendants who have attempted to remove state

11   law claims arising out of COVID-19 related injuries using the same arguments as

12   Defendant presents here.  This Court joins the chorus of courts who have remanded such

13   cases when presented with similar facts and arguments as those in the present action.[2]

14   The Court addresses each of Defendant's three arguments in turn below.[3]

15

16   [2] *See Acra v. California Magnolia Convalescent Hospital, Inc.*, 2021 WL 2769041 (C.D. Cal., July 1,
     2021); *Harry Forman v. C.P.C.H.*, 2021 WL 2209308 (C.D. Cal. June 1, 2021); *Moody v. Lake Worth

17   Investments, Inc.*, No. 4:21-cv-00160-O, Dkt. 18 (N.D. Tex. May 26, 2021); *Lopez v. Greenfield Care

18   Center of South Gate, LLC*, No. 2:21-cv-02806-RGK-PVC, Dkt. 25 (C.D. Cal May 19, 2021); *Bolton v.
     Gallatin Center for Rehab. & Healing, LLC*, 2021 WL 1561306 (M.D.Tenn. April 21, 2021); *Hopman v.

19   Sunrise Villa Culver City*, 2021 WL 1529964 (C.D. Cal. April 16, 2021); *Winn v. California Post Acute*,
     2021 WL 1292507 (C.D. Cal. Apr. 6, 2021); *Mitchell v. Advanced HCS, LLC*, 2021 WL 1247884 (N.D.

20   Tex, April 5, 2021); *Lopez v. Advanced HCS, LLC*, 2021 WL 1259302 (N.D. Tex, April 5, 2021);
     *Schuster v. Percheron Healthcare, Inc.*, 2021 WL 1222149 (N.D. Tex. April 1, 2021); *Stone v. Long

21   Beach Healthcare Center*, 2021 WL 1163572 (C.D. Cal. Mar. 26, 2021); *Smith v. Colonial Care Center,
     Inc.*, 2021 WL 1087284 (C.D. Cal. March 19, 2021); *Estate of McCalebb, v. AG Lynwood, LLC*, 2021

22   WL 911951 (C.D. Cal. Mar. 1, 2021); *Roberston v. Big Blue Healthcare, Inc.*, 2021 WL 764566 (D.
     Kan Feb. 26, 2021); *Estate of Jones through Brown v. St. Jude Operating Company, LLC*, 2021 WL

23   900672 (D. Or. Feb. 16, 2021) report and recommendation adopted by 2021 WL 1087284 WL 886217

24   (D. Or. Mar 8, 2021); *Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137 (E.D.N.Y. Feb. 2,
     2021).

25   [3] The Court denies Defendant's request for jurisdictional discovery.  The decision to permit or deny
     jurisdictional discovery lies in the Court's discretion.  *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198

26   F.R.D. 670, 673 (S.D. Cal. 2001).  A district court does not abuse its discretion when a request for
     jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant

27   facts."  *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  Defendant has not provided even a

28   hunch, as it merely requests jurisdictional discovery without indicating to the Court what jurisdictionally
     relevant facts might be discovered.

**A.      Complete Preemption Pursuant to PREP Act**

**1.      The Complete Preemption Doctrine**

Ordinarily, federal preemption of state law claims is raised as a federal defense, which is not a legitimate basis for removal.  *See Caterpillar v. Williams*, 482 U.S. 386, 392-93 (1987).  However, when state law claims are completely preempted by a federal statute, they may be "recharacterized" as federal claims and removed to federal court. *See Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).  The Ninth Circuit has held that "complete preemption for purposes of federal jurisdiction under Section 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action."  *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020) (internal citation omitted). "[C]omplete preemption is rare."  *Hansen v. Group Health Cooperative*, 902 F.3d 1051, 1057 (9th Cir. 2018.)  The Supreme Court has found complete preemption applicable to only three federal statutes.  *See City of Oakland*, 969 F.3d at 905 (noting that complete preemption applies only to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, § 502(a) of the Employee Retirement Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act).

\\

\\

The Court further denies Defendant's request to issue a temporary stay on remand.  Whether Defendant is entitled to a stay pending appeal depends on "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotations omitted).  As with its request for jurisdictional discovery, Defendant's request for a stay is devoid of support, and it fails to address any of the *Nken* factors.

2.      **The PREP Act**

The PREP Act authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency."  42 U.S.C. § 247d-6d(b).  The PREP Act immunizes from suit certain "covered persons" with respect to claims "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure."  42 U.S.C. § 247d-6d(a)(1). Under the PREP Act, a covered countermeasure refers to drugs, biological products, or devices that are designed to diagnose, mitigate, prevent, or treat harm stemming from the public health emergency.  42 U.S.C. § 247d-6d(i)(1), (7).  When the PREP Act applies, plaintiffs are relegated to recovery through the Countermeasures Injury Compensation Program—a regulatory program providing reimbursement for losses associated with the use or administration of covered countermeasures.  42 U.S.C. § 247d-6(e).  Only where the plaintiff alleges willful misconduct may the plaintiff file a civil action, and such actions must be filed in the District of Columbia.  42 U.S.C. § 247d-6d(c), (d).

On March 10, 2020, the HHS Secretary (the "Secretary") declared the COVID-19 pandemic a public health emergency under the PREP Act.  85 Fed. Reg. 15198.  In the declaration, the Secretary defined "covered countermeasures" as: "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19…or any device used in the administration of any such product, and all components and constituent materials of any such product." *Id*. at 15202.  On December 3, 2020, the Secretary amended his March 2020 declaration for a fourth time (hereinafter "FAD"), in part to provide an explanation of what is meant by "administration of covered countermeasures."  85 Fed. Reg. 79190.  The Secretary explained that administration refers to the "physical provision of the countermeasures to

recipients, or activities and decisions relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id*. at 79197.  The Secretary also noted that cases of inaction are not necessarily beyond the PREP Act's scope.  *Id*.  Specifically, the Secretary explained that non-administration of a covered countermeasure could fall under the PREP Act when the covered countermeasure was not administered to one individual because it was scarce and administered instead to another individual.  *See id*. The Secretary concluded that "[p]rioritization or purposeful allocation of a Covered Countermeasure…can fall within the PREP Act and this Declaration's liability protections." *Id*.

### 3.     Plaintiff's Claims Do Not Fall Within the Scope of the PREP ACT

Plaintiff has only alleged inaction in his complaint, and not the type of inaction the Secretary identified as falling within the scope of the PREP Act.  Before complete preemption can apply to a plaintiff's state law claims, the claims at issue must fall within the scope of the relevant federal statute.  *See Stone v. Long Beach Healthcare Center, LLC*, 2021 WL 1163572, at *4-5 (C.D. Cal. Mar. 26, 2021); *Smith v. Colonial Care Center, Inc.*, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021).  Surely, failing to inform the Deceased or his family of a COVID-19 outbreak at Cedar Mountain before readmitting the Deceased to the facility has nothing to do with the administration of covered countermeasures.  *See, e.g.*, *Hopman v. Sunrise Villa Culver City*, 2021 WL 1529964, at *4-6 (remanding when plaintiff alleged failure to isolate patients and failure to notify decedent's spouse of decedent's move to a shared room); (*see also* Compl. ¶ 22a-b.)  The same goes for Defendant's alleged failure to enforce social distancing, cancel group activities, restrict visitation, and ensure adequate staff.  (*See* Compl.

¶ 22c-f.)  These failures to act do not implicate the use or nonuse of drugs, biological products, or medical devices.

Defendant seizes on Plaintiff's allegation that Cedar Mountain failed to properly implement and maintain a proper infection prevention and control program, actively screen staff for fever or symptoms, and monitor the Decedent for changes in his health. (Opp. at 16.)  Though Plaintiff's complaint never mentions a covered countermeasure explicitly, Defendant argues that these allegations "by their very nature relate to use of covered countermeasures."  (*Id.*)  This has become a common refrain from defendants seeking to remove COVID-related actions to federal court, and courts within this district have routinely rejected the argument when faced with similar allegations.  *See Stone*, 2021 WL 1163572 at *4-5; *Smith*, 2021 WL 1087284 at *4-6; *Winn v. California Post Acute LLC*, 2021 WL 1292507, at *3 (C.D. Cal. Apr. 6, 2021); *Estate of McCalebb v. AG Lynwood, LLC*, 2021 WL 911951, at *5 (C.D. Cal. Mar. 1, 2021).

*McCalebb* is particularly instructive on this point and involves several allegations that are markedly similar to those at issue in the present action.  In *McCalebb*, the court addressed allegations that the defendant failed to isolate COVID-19 carriers, notify staff or residents of COVID-19 carriers, take necessary precautions to ensure the decedent did not contract COVID-19, test residents and staff, and provide personal protective equipment to its employees.  2021 WL 911951, *1-2.  The court acknowledged that HHS's FAD declared that purposeful decisions to refrain from acting based on resource allocation and preservation fell within the scope of the PREP Act.  *Id*. at *5.  But the court concluded it was not faced with such a case.  While the complaint in *McCalebb* did reference the defendant's alleged failure to use certain covered countermeasures, the court concluded that the complaint nonetheless "describe[d] overall inattention rather than conscious decision-making about covered countermeasures while delivering care." *Id*. at *5.

The complaint in the present action—which, unlike the complaint in *McCalebb*, does not even mention a single covered countermeasure—also describes general inattention and inaction, rather than reasoned inaction bourn of resource scarcity. *See Winn*, 2021 WL 1292507 at *3 (explaining that claims of inaction fall within scope of PREP Act when "(1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual.") Plaintiff's Complaint is silent on the reason for Defendant's many forms of alleged inaction, and Defendant offers no evidence that its inaction was purposeful and reasoned.

Defendant invites the Court to read references to covered countermeasures into Plaintiff's Complaint. For example, Defendant argues that its alleged failure to monitor the temperatures of its patients and staff necessarily relates to the use of thermometers, a covered countermeasure. (Opp. at 16.) Even if the Court allows this expansive reading of Plaintiff's complaint, *see Forman v. C.p.c.h., Inc.*, 2021 WL 2209308, at *2 (C.D. Cal. June 1, 2021) (criticizing the defendant for reading too much into the plaintiff's complaint), Defendant's argument does not hold up. If anything, Defendant's alleged failure to monitor the temperatures of its staff and patients relates to the *nonuse* of thermometers, and nothing in the Complaint would suggest that such nonuse was the thought-out result of a shortage in thermometers.

Further, Defendant points out various actions that it took at Cedar Mountain that involved the administration of covered countermeasures to argue that this is not a case of pure inaction. (Opp. at 17.) Defendant very well may have taken *some* actions at Cedar Mountain, but it does not necessarily follow that the inaction alleged in the complaint was the product of a reasoned decision. *See Brown v. Big Blue Healthcare*, 480 F.Supp. 3d 1196, 1206 (D. Kan. 2020) ("[A] facility using covered countermeasures *somewhere*

in the facility is [not] sufficient to invoke the PREP Act as to all claims that arise in that facility.") (emphasis in original).

### 4.      The PREP Act Is Not A Complete Preemption Statute

Even if Plaintiff's allegations could be read as relating to the administration of covered countermeasures, the Court agrees with multiple other courts that the PREP Act is not a complete preemption statute.  First, this case, as well as the number of other cases holding that general inaction does not fall within the scope of the PREP Act when such inaction is not the product of reasoned resource allocation, show that the PREP Act does not "wholly displace" state law claims.  *See Beneficial Nat'l Bank*, 539 U.S. at 8; *see also Stone*, 2021 WL 1163572 at *5 ("[T]he PREP Act does not completely replace state law claims related to COVID-19.  As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures."); *Winn*, 2021 WL 1292507 at *4-5.

Additionally, the PREP Act does not provide a substitute cause of action for Plaintiff's negligence or recklessness claims.[4]  *See City of Oakland*, 969 F.3d at 906. Rather, Congress established an emergency fund to provide "adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure."  42 U.S.C. § 247d-6e(a).  The Secretary makes determinations as to eligibility under the program which are not subject to judicial review.  42 U.S.C.

---

[4] Unlike negligence and recklessness claims, Section 247d-6d(d)(1) of the PREP Act does provide an exclusive federal cause of action for claims of willful misconduct.  Here, Plaintiff does make some allegations of willful misconduct.  (Compl. ¶¶ 53-65.)  These allegations, however, do not change the Court's analysis.  The gist of those allegations is that Defendant failed to act and did so with conscious disregard of the known risk of its inaction.  This alleged willful misconduct is not the type of reasoned and intentional inaction covered by the FAD.  In other words, while the PREP Act may provide a federal cause of action for willful misconduct, the Court finds that the willful misconduct alleged here falls outside the scope of the PREP Act.

-10-

§§ 247d-6e(b)(5)(C) & 239a(f).  Under Ninth Circuit law, such administrative relief is not the type of displacement remedy that triggers complete preemption.  *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245-46 (9th Cir. 2009).  Numerous courts in this district have reached the same conclusion.[5]  *See McCalebb*, 2021 WL 911951 at * 4 ("The PREP Act does not create original federal jurisdiction over a covered claim for negligence or recklessness."); *Stone*, 2021 WL 1163572 at *5 ("[T]he PREP Act does not provide a substitute cause of action for Plaintiff's claims based on Defendant's negligence."); *Winn*, 2021 WL 1292507 at *4.

### B.   The *Grable* Doctrine

Defendant next argues that the *Grable* doctrine provides federal question jurisdiction over this case.  The Supreme Court in *Grable & Sons Metal Products, Inc v. Darue Eng'g & Mfg.* held that federal question jurisdiction lies where a state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  545 U.S. 308, 314 (2005).  In other words, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  Here, a federal issue is not necessarily raised by Plaintiff's Complaint because the federal issue arises from Defendant's potential preemption

---

[5] Defendant urges the Court to defer to a January 8, 2021 advisory opinion from the HHS Office of the General Counsel.  (*See* Opp. at 10.)  This advisory opinion asserts that "the PREP Act is a complete preemption statute."  (Dkt. 13-30 [Request for Judicial Notice, Ex. DD, hereinafter "AO 21-01"] at 3.)  The Court will not defer to this advisory opinion, as it fails to explain how the administrative remedy provided for in the PREP Act can be transformed into a federal cause of action as necessary to supply original jurisdiction.  *McCalebb*, 2021 WL 911951 at *4, n.5 (holding the same); *see also Smith*, 2021 WL 1087284 (characterizing the advisory opinion as "contrary to law"); *Winn*, 2021 WL 1292507 at *3, n.1; *Stone*, 2021 WL 1163572 at *6.

defense.  *See Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1288 (C.D. Cal. 2021); *Stone*, 2021 WL 1163572 at *7; *Winn*, 2021 WL 1292507 at *5; *McCaleb*, 2021 WL 911951 at *3.  Therefore, *Grable*'s first prong is not met.

The Secretary and the HHS Office of General Counsel (the "OGC") have expressed a contrary view.  *See* FAD; AO 21-01.[6]  In the FAD, the Secretary explained that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable*...in having a unified, whole-of-nation response to the COVID-19 pandemic."  85 Fed. Reg. at 79198.  In a January 8, 2021 advisory opinion, the OGC summarily concluded that the Secretary's statement "provides the underlying basis for invoking the *Grable* doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."  (AO 21-01 at 4-5.)  Neither the Secretary nor the OGC explained why *Grable*'s requirements are met solely because there is a substantial federal interest in a unified response to the COVID-19 pandemic.  Such an analysis ignores other of *Grable*'s factors—that a substantial federal interest exists does not mean that it is necessarily raised by a plaintiff's claims in cases such as the present action.  The Court follows various other courts in this district in not giving weight to the conclusory *Grable* analyses of the Secretary and the OGC.  *See Stone*, 2021 WL 1163572 at *7; *McCaleb*, 2021 WL 911951 at *3; *Winn*, 2021 WL 1292507 at *5, n.2.

\\

\\

\\

---

[6] The Court takes judicial notice of the HHS Office of the General Counsel Advisory Opinion, dated January 8, 2021.  "Under [Federal Rule of Evidence] Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the internet such as websites run by government agencies."  *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F.Supp.3d 1362, 1381 (C.D. Cal. 2014).

## C.    Federal Officer Removal

Finally, Defendant argues that removal is appropriate under 28 U.S.C. § 1442(a). Federal officer removal is available under 28 U.S.C. § 1442(a) if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (internal quotations omitted).  For 28 U.S.C. § 1442(a) to apply, Defendant must establish that there was a causal nexus between Defendant's conduct and Plaintiff's claims, while Defendant was "acting under" the direction of a federal officer.  *See* 28 U.S.C. § 1442(a)(1); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).  The Supreme Court has held that the phrase "acting under" refers to "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007) (emphasis in original).  "Acting under" describes "a relationship typically involv[ing] subjection, guidance, or control." *Id*. at 151.  Mere compliance with federal regulations, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored," does not fall within the scope of the statute.  *Id*. at 153.

Defendant argues that it was acting under the direction of a federal officer by following the detailed directives issued by the Centers for Disease Control ("CDC") and the Centers for Medicare and Medicaid Services ("CMS").  (Opp. at 21-25.)  As explained in Section IV.A., Plaintiff alleges that Defendant failed to act.  Defendant's inaction cannot be characterized as action under the direction of a federal officer.  Further, numerous courts in this district have held that skilled nursing facilities have not acted under the direction of a federal officer in following the COVID-related directives of the CDC and CMS, finding instead that those facilities have merely been complying with federal regulations.  *See Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995, at *3

(C.D. Cal. Oct. 14, 2020) (holding that where the defendants argued that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives," such regulations and public directives were "insufficient" to confer jurisdiction under the federal officer removal statute); *McCalebb*, 2021 WL 911951 at *6-7; *Winn*, 2021 WL 1292507 at *6; *Smith*, 2021 WL 1087284 at *8; *Acra v. California Magnolia Convalescent Hosp.*, 2021 WL 2769041, at *7 (C.D. Cal. July 1, 2021). Defendant has done nothing to distinguish itself from the nursing facilities involved in these cases.  At most, Defendant has established that it is subject to "highly detailed" regulations and that its "activities are highly supervised and monitored."  *See Watson*, 551 U.S. at 152.  That is not sufficient to invoke federal officer removal.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**.  This action is hereby remanded back to San Bernardino County Superior Court.

DATED:    October 7, 2021

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

-14-